RECEIVED
JUN - 4 2018
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| JUAN GASPARD | CIVIL ACTION NO. 2:16-01431 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| BECHTEL OIL, GAS & CHEMICALS CONSTRUCTION SERVICES, INC. | MAG. JUDGE KAY |

## MEMORANDUM RULING

Before the court is "Defendant Bechtel Oil, Gas & Chemicals Construction Services, Inc.'s Motion for Summary Judgment" (R. #29) wherein the mover seeks to dismiss Plaintiff, Juan Gaspard's claims pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1. Bechtel Oil, Gas & Chemicals, Construction Services, Inc. ("Bechtel") maintains that Plaintiff cannot establish a prima facie case for three (3) reasons: (1) he did not identify any specific state law violation while employed by Bechtel; (2) there was no violation of any Louisiana law; and (3) Plaintiff cannot establish a causal connection between his alleged protected activity and his discharge. Bechtel also moves for dismissal because Plaintiff cannot show that Bechtel's decision to terminate his employment was pretext for unlawful retaliation.

## STATEMENT OF FACTS

Mr. Gaspard was employed by Bechtel on two separate occasions: (1) from December 14, 2014 until March 16, 2015; and (2) from August 24, 2015 until he was

1

terminated on October 12, 2015.[1] Bechtel Superintendent, Walter Wendler, terminated Plaintiff's employment documenting the following reasons:

> Mr. Gaspard's termination is based on his accumulated misconduct, unpredictable behavior, and poor judgment since his hire on August 24, 2015. Some examples are reporting an injury several days after it occurred, using curse words and aggressive behavior toward a female coworker, being out of his work area for three hours, changing stories in the middle of incident investigations, being aggressive, loud and confrontational during incident investigations, and finally, his reckless behavior that could have potentially caused an injury to a coworker when Mr. Gaspard was rigging on a pipe that the coworker was trying to secure.[2]

On September 12, 2015, Mr. Gaspard reported that he was injured on August 29, 2015 while being transported in a lift operated by a female co-worker.[3] Plaintiff admitted that on August 29, 2015, he cursed and yelled at a female co-worker shouting "[w]hat the f... are you doing, you stupid b....."[4] Superintendent Wendler investigated Plaintiff's conduct during an October 3, 2015 work assignment and concluded that Plaintiff disregarded instructions, acted recklessly and demonstrated poor judgment.[5] In that regard, Wendler made the following conclusions:

> I believe Mr. Gaspard's behavior is unpredictable. I owe my other employees a safe and friendly work environment, and Mr. Gaspard is making that difficult. I hate to lose him as a skilled craftsman, but in my opinion the frustration he brings to the crew and the risk he poses to a safe work environment outweigh his ability as a Pipefitter.[6]

---

[1] Bechtel App. p. 1, ¶ 2.
[2] Id. pp. 2,4; Wendler Aff., ¶ 3 and Termination Notice.
[3] Id. p. 11.
[4] Id. p. 76(A); Plaintiff depo. p. 159.
[5] Id. pp. 2-3, 32; Wendler Aff. ¶ 7 & Investigation Summary at p. 2.
[6] Id. pp. 3, 34; Wendler Aff. ¶ 8 & Termination Summary at p. 2.

As to Mr. Gaspard's concerns regarding safety issues, he testified that he complained to Bechtel through Walt Wendler of the following issues (1) workers were either unskilled, or had "shoddy craftsmanship", (2) there was a "language barrier" created by non-English speaking workers, (3) employees possessed and used cell phones at work, (4) people walking under suspended loads, and work being performed under suspended loads, (5) "open holes in decks" (6) "overstressed" chokers, (7) and "pipe hanging by lashing that wasn't on." [7] Mr. Gaspard also testified that after his termination, he reported these same concerns to the OSHA Area Office in Baton Rouge.[8]

Bechtel challenges Mr. Gaspard's categorization of the above mentioned alleged violations as violations of "industry standards" as opposed to a violation of a specific code.[9] Bechtel informs the court that Mr. Gaspard attempted to cause OSHA to change a standard by filing suit against OSHA alleging that the existing OSHA standard as to "open holes" was defective.[10] That complaint was dismissed.

After an investigation by OSHA, Mr. Gaspard's whistleblower complaint was dismissed; OSHA concluded that Mr. Gaspard was terminated for legitimate, non-retaliatory reasons:

> The investigation demonstrated that Complainant was discharged for not reporting a work related injury for 14 days after the injury, a violation of Respondent's safety policies, and violation of the anti-harassment policy by yelling and cursing at a co-worker. In addition, as a crew was attempting to lash down a pipe, Complainant ignored their commands to stop work and persisted

---

[7] Bechtel Appx. pp. 51-52; Gaspard depo. pp. 115-16.
[8] Id. Appx. pp. 43-43; Gaspard depo. p. 121.
[9] See Gaspard depo. pp. 124-125, 132-34.
[10] Referring to 29 C.F.R. § 1910.23. Bechtel App. p. 50, Gaspard depo. p. 109.

3

in trying to move the pipe. Because of Complainant's actions a co-worker almost suffered a hand injury.[11]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[12] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[13] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[14] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[15] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[16] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[17] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no

---

[11] Id. pp. 100-01; 11/2/15 OSHA Determination.
[12] Fed. R. Civ. P. 56(c).
[13] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[14] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).
[15] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).
[16] Anderson, 477 U.S. at 249.
[17] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

4

reasonable trier of fact could find for the non-moving party.[18] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[19] The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[20]

**LAW AND ANALYSIS**

Louisiana Revised Statute 23:967, the Louisiana Whistleblower Statute ("LWS"), provides as follows:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
> ***

A violation of the statute occurs if: (1) the employer violated Louisiana law through a prohibited workplace practice; (2) the plaintiff advised the employer of the violation; (3) the plaintiff threatened to disclose or disclosed the prohibited practice; and (4) the plaintiff was terminated as a result of the threat to disclose or because of the disclosure of the prohibited

---

[18] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[19] Anderson, 477 U.S. at 249-50.
[20] Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

5

practice.[21] Thus, Mr. Gaspard must prove that Bechtel "committed an *actual* violation of [Louisiana] law,"[22] not just a good faith belief that a law was broken.[23]

In order for Mr. Gaspard to establish a *prima facie* case of retaliation under the LWS, he must show (1) that he engaged in activity protected by the statute; (2) he suffered an adverse employment action; and (3) a causal connection existed between the activity in which he engaged and the adverse action."[24] Claims under the LWS are analyzed under the framework espoused in McDonnell Douglas Corp. v Green,[25] wherein once a plaintiff makes a *prima facie* showing that his termination was retaliatory, the burden shifts to the defendant "to state a legitimate, non-discriminatory reason" for firing the plaintiff.[26] After the defendant states a legitimate, non-discriminatory reason for the termination, the burden "shifts back" to the plaintiff "to show pretext; that is, to prove by a preponderance that the employer fired him, not for its stated reasons, but in retaliation for his stated intention to report illegal workplace practices."[27]

Bechtel maintains that Mr. Gaspard's complaint must be dismissed because he failed to report to his employer and/or his supervisor(s) a specific violation of Louisiana's safety laws. Mr. Gaspard maintains otherwise. Mr. Gaspard asserts that during his two tenures with Bechtel, he complained of safety violations daily such as those mentioned hereinabove. Mr. Gaspard submits his own deposition testimony and the affidavit of Matthew Brewer who declares that Mr. Gaspard "Juan complained onsite to other Bechtel employees and supervisors of unsafe working

---

[21] Richardson v. Axion Logisitcs, L.L.C., 780 F.3d 304, 306 (5th Cir. 2015).
[22] Wilson v. Tregre, 787 F.3d 322, 326 (5th Cir. 2015).
[23] Ross v. Oceans Behavioral Hosp. of Greater New Orleans, 165 So.3d 176, 180 (La. Ct. App. 2014).
[24] Bain v. Ga. Gulf Corp., 462 Fed.Appx. 431, 33 (5th Cir. 2012).
[25] 411 U.S. 792, 93 S.Ct. 1817, (1973).
[26] Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 805 (5th Cir. 2007).
[27] Id. at 806.

conditions and violations of industry standards and state law many times.[28] Mr. Brewer also declared that he had "witnessed several unsafe working conditions . . . ."[29]

Mr. Gaspard maintains that Bechtel violated state laws; he relies on Louisiana Revised Statute 23:13 regarding an employer's duty as to safety. It provides as follows:

> Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees….

Mr. Gaspard testified in his deposition that immediately after he was terminated, and after complaining about "open holes," he received a call from an OSHA investigator about an incident where Donald Jenkins fell to his death through one of the open manholes.[30]

Mr. Gaspard alleges he reported numerous safety violations to Wendler, Paul Mallos and Richard Swartzmiller.[31] In additions to complaints of the lack of communication between English speaking and Spanish speaking workers, Mr. Gaspard complained that he was required to work beneath suspended loads and also that he was ordered to suspend a load to allow a crew to work beneath him.[32] Mr. Gaspard testified that he complained to Rolanda White and other foremen about working daily under suspended loads.[33]

---

[28] Gaspard exhibition F, Matthew Brewer affidavit, ¶ 5.
[29] Id. ¶ 6.
[30] See Gaspard's depo. pp. 248-249; Gaspard exhibit B, Walt Wendler depo. pp. 19-20; Gaspard exhibit C, Complaint Letter.
[31] Most of Mr. Gaspard's complaints were verbal, but he also sent emails to Paul Mallos regarding unsafe conditions at the jobsite. Gaspard exhibit A, Gaspard depo. p. 221.
[32] Id. pp. 142-143, 248; see also diagram, Exhibit 3 to Gaspard exhibit D, Lynch depo., 30(b)(6) depo. for Bechtel.
[33] Id.

7

In his deposition, Mr. Gaspard testified that his first tenure with Bechtel ended with termination by a timekeeper who for reasons unrelated to this lawsuit, intentionally terminated his timecard which denied him access to the jobsite. Mr. Gaspard contacted Bechtel employee Paul Mallos, which resulted in his reinstatement. Mr. Gaspard contends that because of his outspokenness about unsafe conditions, the company conspired to terminate him. Mr. Gaspard testified that his supervisor, Frank Butler suggested to him that he (Butler) was being ordered to find a reason to fire Gaspard. Mr. Gaspard further testified that he was then transferred to the supervision of Walt Wendler, an engineer and licensed attorney, in order for Mr. Wendler to create pre-textual context for Gaspard's already contemplated termination. Mr. Gaspard remarks that during discovery, Bechtel has only presented testimony from Mr. Wendler and no other Bechtel employees to corroborate Mr. Wendler's reasons for termination.

Mr. Gaspard argues that he was terminated for attempting to move pipe into a secure position for lashing, whereas the foreman was instructing him to lash the pipe in violation of Bechtel policy and industry standards.[34] In addition to his own deposition testimony, Mr. Gaspard has submitted as summary judgment evidence the affidavit of Matthew Brewer who declares that this incident stemmed from a miscommunication in which Gaspard was actually trying to complete the lashing in a safe manner.[35] Mr. Brewer's affidavit also states the following:

> 4. Shortly after the incident above occurred, Walt Wendler ("Wendler"), our supervisor separated Larry and me from Juan. Wendler required us to give statements and he provided the language used in the statements, which supposedly was our own words. He made each of us sign the statements as if it were our own.

---

[34] Id. p. 132.
[35] Gaspard exhibit F, Brewer affidavit.

8

> 5. Wendler stated he wanted to terminate Juan because Juan caused trouble by complaining about unsafe working conditions. Juan complained onsite to other Bechtel employees and supervisors of unsafe working conditions and violations of industry safety standards and state law many times.
> 6. I felt my job was in jeopardy if I refused to write the statement as Wendler instructed.
> 7. I heard many employees curse at the Project site, but never witnessed anyone be disciplined for cursing except Juan. Cursing was a daily occurrence and often the employees would curse in jest at one another. Cursing is common on construction sites.
> 8. Also, minor injuries were part of working as a pipe fitter or helper on the Project. Employees would generally not report minor injuries, such as bruises or small cuts, because complaining could lead to termination.

Bechtel objects to Plaintiff's reliance on Louisiana Revised Statute § 23:13 to establish a *prima facie* case and asserts that Bechtel did not violate any OSHA standard, and Mr. Gaspard did not identify a specific violation of an OSHA standard while employed. Bechtel argues that Mr. Gaspard cannot rely on alleged violations of OSHA standards to establish that Bechtel violated Louisiana Revised Statute 23:13; instead, he can only rely on a violation(s) of state law. Bechtel refers the court to Mr. Gaspard's deposition testimony wherein he could not identify a particular state law violation but instead indicated that Bechtel was violating industry standards and/or safety standards. Bechtel also relies on the dismissal of Mr. Gaspard's lawsuit against OSHA wherein he attempted to cause OSHA to change its standards as well as his complaint filed with OSHA against Bechtel which was also dismissed finding that Mr. Gaspard was terminated for legitimate, non-retaliatory reasons.

Bechtel argues that Mr. Gaspard's reliance on Mr. Brewer's affidavit to prove pretext is an insufficient basis to second-guess the good faith determination that Plaintiff presented a safety risk and danger to his co-workers.

The Louisiana Supreme Court has endorsed the position uniformly adopted by the Louisiana appellate courts which hold that only state law can support a cause of action under the LWS.[36] Not only must a plaintiff rely on state law, but he must also point to a specific provision of state law which the employer violated.[37] The Louisiana appellate courts hold that it must be the **employer**, not a mere co-worker or third party[38] which **actually** violates the state law.[39] Finally, Louisiana appellate courts and federal courts that have considered the issue agree that the employee must have knowledge of the state law violation at the time he advises the employer of it.[40]

Plaintiff has failed to identify a violation of a specific state law, and even if he could rely on Louisiana Revised Statute 23:13 or OSHA standards which are federal law,[41] his complaints

---

[36] See Encalarde v. New Orleans Ctr. For Creative Arts/Riverfront, 158 So.2d 826-27 (La. 2/13/15); Accardo v. La. Health Servs. & Indem. Co., 943 So.2d 381 (La. App. 1 Cir. 6/26/06); Barber v. Marine Drilling Mgmt., Inc., 2002 U.S. Dist. LEXIS 2821, 2002 WL 237848 at *10 (E.D. La. Feb. 15, 2002); Wilson v. Tregre, 878 F.3d 322 (5th Cir. 2015); Wells v. City of Alexandria, 2004 U.S. App. LEXIS 8525, 2004 WL 909735 at *1 (5th Cir. Apr. 29, 2004).

[37] Ware v. CLECO Power, LLC, 90 Fed. App'x. 705 (5th Cir. 2004); Genella v. Renaissance Media, 115 Fed. App'x 650 (5th Cir. 2004).

[38] See Fondren v. Greater New Orleans Expressway Comm'n, 871 So.2d 688, 691 (La. App. 5 Cir. 4/27/04)(citing Puig v. Greater New Orleans Expressway Comm'n, 871 So. 2d 731 (La. 3/9/01)); Goulas v. LaGreca, 945 F.Supp.2d 693, 703 (E.D. La. 2013)(holding that employee who advised that co-worker was using drugs on premises did not have an LWS claim) aff'd sub nom., Goulas v. LaGreca Serv., Inc. 557 Fed. App'x 337, (5th Cir. 2014).

[39] Accardo, 943 So.2d at 383; Hale v Touro Infirmary, 886 So.2d 1210 (La.App. 4 Cir. 11/3/04), writ denied, (896 So.2d 1036 (La. 3/24/05); Goldsby v. State Dep't of Corr., 861 So.2d 236 (La. App. 1 Cir. 11/7/03), writ denied, 870 So.2d 271 (La. 4/8/04) and writ denied, 870 So.2d 271 La. 4/8/04).

[40] Crowe v. Southeast Comm. Health Sys., 2014 U.S. Dist. LEXIS 51861, (E.D. La. Apr. 14, 2014)(citing Hale, 886 So.2d at 1215).

[41] Mr. Gaspard does identify OSHA standards (29 C.F. R. § 1910.23 as to floor coverings, 29 C.F.R. § 1425 as to suspended loads), but again these are Federal regulations, not state law.

were of conduct by his co-workers, not his employer. While this court could conclude that there is a genuine issue of material fact for trial as to pretext based on the summary judgment evidence submitted by Mr. Gaspard, there is no dispute that Plaintiff did not identify a specific state law that he reported to his employer, and that the conduct he did complain of to his employer was by his co-workers, not his employer. Applying these principles, we find that Mr. Gaspard has failed to establish a *prima facie* case of retaliation under the LWS; thus, we need not address Bechtel's legitimate, nonretaliatory reason for its actions, nor whether or not Bechtel's reasons for termination are pretext for a retaliatory motive.

## CONCLUSION

Based on the foregoing analysis, the court finds that summary judgment in favor of Bechtel is appropriate on Mr. Gaspard's LWS claim.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 4th day of June, 2018.

_____
**JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE**